UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Terts Verhaak,<br><br>    *On behalf of himself and those similarly<br>    situated*,<br><br>        Plaintiff,<br><br>   v.<br><br>Kindred Hospitality Group LLC, Austin<br>Heidt, and Giovanni Ranieri,<br><br>        Defendants. | Civil Action No. 1:24-cv-138<br><br><br><br><br><br><br>Jury Demand Endorsed Herein |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Terts Verhaak, on behalf of himself and all similarly situated employees, brings this action against Al Posto Restaurant. Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Al Posto's willful failure to compensate Plaintiff and similarly situated employees as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60. Plaintiff also seeks damages under the theory of unjust enrichment.

2.     Defendants Kindred Hospitality Group LLC; Austin Heidt; and Giovanni Ranieri (collectively "Defendants") own and operate Al Posto Restaurant located at 2710 Erie Avenue in Cincinnati, Ohio.

3.     Plaintiff Terts Verhaak worked at Al Posto as a back waiter then as a server from September 2023 to March 14, 2024.

4.     Al Posto pays a tipped wage rate to its servers, bartenders, and back waiters (the "Tipped Employees").

5.     Plaintiff alleges that Al Posto misappropriates tips paid to its servers, bartenders, and back waiters.

6.     Specifically, Plaintiff alleges that non-tipped employees, including cooks and managers, are included in Al Posto's tip pool.

7.     Plaintiff also alleges that the servers at Al Posto are required to do substantial side work—comprising more than 20% of their shift—while being paid a tipped wage rate.

8.     Plaintiff brings this action on behalf of himself and similarly situated current and former Tipped Employees employed at Al Posto within the three years prior to the filing of this action who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA by Defendants.

9.     Plaintiff also brings this action on behalf of himself and similarly situated Tipped Employees, pursuant to Fed. R. Civ. P. 23, to remedy violations of the Ohio Constitution, Article II, Section 34a, the Ohio Prompt Pay Act, O.R.C. § 4113.15, and the Ohio Criminal Acts Statute, O.R.C. § 2307.60, and for unjust enrichment.

10.    Plaintiff and his fellow Tipped Employees have been subject to the same policies and practices that violate the FLSA and Ohio law.

## Jurisdiction and Venue

11.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

12.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

13.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Terts Verhaak**

14.     Plaintiff is an individual residing in Cincinnati, Ohio.

15.     Plaintiff has given written consent to join this action.

16.     At all relevant times, Plaintiff has been an "employee" of Defendants within the meaning of the FLSA and Ohio law.

**Defendants**

17.     Defendants have employed Plaintiff and the Tipped Employees at all relevant times.

18.     Plaintiff seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who acts or has acted directly or indirectly in the interest of Al Posto in relation to Plaintiff and the Tipped Employees.

19.     Defendants Kindred Hospitality Group LLC, Austin Heidt, and Giovanni Ranieri make up all or part of the organized group of persons who acts or has acted directly or indirectly in the interest of Al Posto in relation to Plaintiff and similarly situated Tipped Employees.

20.     Each of the Defendants had control over the working conditions of Plaintiff and the Tipped Employees.

21.     At all times relevant, Al Posto has been owned by Austin Heidt and Giovanni Ranieri.

22.     At all times relevant, Defendants maintained control over labor relations at Al Posto.

23.     Defendants suffer or permit Plaintiff and other Tipped Employees to work.

24.     Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of the Tipped Employees.

25.     During all relevant times, Defendants exercised operational control over Al Posto, including, but not limited to, control over recruiting and training, compensation, job duties, reimbursements, design and layout of the restaurant, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**Kindred Hospitality Group LLC**

26.     Defendant Kindred Hospitality Group LLC is a domestic limited liability company, with its headquarters in Cincinnati, Ohio.

27.     Kindred Hospitality Group LLC is owned by Austin Heidt and Giovanni Ranieri.

28.     Kindred Hospitality Group LLC is the "employer" of Plaintiff and the Tipped Employees as that term is defined by the FLSA and Ohio law.

29.     Kindred Hospitality Group LLC is the entity on Plaintiff's paystubs.

30.     Kindred Hospitality Group LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all the Tipped Employees at Al Posto, including policies, practices, and procedures relating to payment of minimum wages.

31.     Kindred Hospitality Group LLC maintains control, oversight, and direction over Plaintiff and the Tipped Employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

32.     Kindred Hospitality Group LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33.     Kindred Hospitality Group LLC's gross revenue exceeds $500,000 per year.

**Austin Heidt**

34.     Defendant Austin Heidt is an owner and operator of Kindred Hospitality Group, LLC.

35.     Austin Heidt lives in Cincinnati, Ohio.

36.     At all relevant times, Austin Heidt has been an "employer" of Plaintiff and the Tipped Employees as that term is defined by the FLSA and Ohio law.

37.     At all relevant times, Austin Heidt has been actively involved in managing the operations of Al Posto.

38.     At all relevant times, Austin Heidt has had control over Al Posto's pay policies.

39. At all relevant times, Austin Heidt has had power over personnel and payroll decisions at Al Posto.

40. Austin Heidt was directly involved in the decision to pay 1.5% of total food sales to the kitchen employees out of the tip pool.

41. Austin Heidt has been involved in the decision to hire, fire, and/or discipline employees who work at Al Posto.

42. At all relevant times, Austin Heidt has had the power to stop any illegal pay practices that harm Plaintiff and similarly situated employees.

43. At all relevant times, Austin Heidt has had the power to transfer the assets and liabilities of Kindred Hospitality Group LLC.

44. At all relevant times, Austin Heidt has had the power to declare bankruptcy on behalf of Kindred Hospitality Group LLC.

45. At all relevant times, Austin Heidt has had the power to enter into contracts on behalf of Kindred Hospitality Group LLC.

46. At all relevant times, Austin Heidt has had the power to close, shut down, and/or sell Kindred Hospitality Group LLC.

47. Al Posto functions for Austin Heidt's profit.

48. Austin Heidt has influence over how Al Posto can be run more profitably.

**Giovanni Ranieri**

49. Defendant Giovanni Ranieri is an owner and operator of Kindred Hospitality Group LLC.

50. Giovanni Ranieri lives in the Cincinnati area.

6

51.     At all relevant times, Giovanni Ranieri has been an "employer" of Plaintiff and the Tipped Employees as that term is defined by the FLSA and Ohio law.

52.     At all relevant times, Giovanni Ranieri has been actively involved in managing the operations of Al Posto.

53.     At all relevant times, Giovanni Ranieri has had control over Al Posto's pay policies.

54.     At all relevant times, Giovanni Ranieri has had power over personnel and payroll decisions at Al Posto.

55.     Giovanni Ranieri was directly involved in the decision to pay 1.5% of total food sales to the kitchen employees out of the tip pool.

56.     Giovanni Ranieri has been involved in the decision to hire, fire, and/or discipline employees who work at Al Posto.

57.     At all relevant times, Giovanni Ranieri has had the power to stop any illegal pay practices that harm Plaintiff and similarly situated employees.

58.     At all relevant times, Giovanni Ranieri has had the power to transfer the assets and liabilities of Kindred Hospitality Group LLC.

59.     At all relevant times, Giovanni Ranieri has had the power to declare bankruptcy on behalf of Kindred Hospitality Group LLC.

60.     At all relevant times, Giovanni Ranieri has had the power to enter into contracts on behalf of Kindred Hospitality Group LLC.

61.     At all relevant times, Giovanni Ranieri has had the power to close, shut down, and/or sell Kindred Hospitality Group LLC.

62.     Al Posto functions for Giovanni Ranieri's profit.

7

63.     Giovanni Ranieri has influence over how Al Posto can be run more profitably.

**Potential Additional Defendants**

64.     Upon information and belief, there are other individuals, entities, and/or limited liability companies that make up part of the Defendants and/or Al Posto operation, and therefore qualify as "employers" because they are part of the organized group of individuals and entities that act directly or indirectly on behalf of Al Posto in relation to Plaintiff and the Tipped Employees.

65.     Upon information and belief, Austin Heidt and/or Giovanni Ranieri own and/or operate, in whole or in part, a number of these entities that make up part of the Al Posto operation.

66.     Upon information and belief other entities owned or operated in whole or in part by Austin Heidt and/or Giovanni Ranieri may be liable for the claims asserted here.

67.     Art of Care Hospitality may qualify as an "employer" as the term is defined by the FLSA and Ohio law.

68.     Art of Care Hospitality is the entity listed on Plaintiff's initial paperwork signed with Al Posto.

69.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

### Facts

### Class Wide Factual Allegations

70.     Since 2022, Defendants have operated Al Posto.

71.     Plaintiff and the Tipped Employees that he seeks to represent are current and former servers, bartenders, and back waiters employed at Al Posto.

72.     All Tipped Employees are paid a tipped wage rate.

73.     Defendants pay the servers $5.50 per hour.

74.     Defendants paid bartenders $9.50 per hour.

75.     Defendants paid back waiters minimum wage.

76.     Defendants maintain an illegal tip pool at Al Posto.

77.     Pursuant to Al Posto policy, the Tipped Employees record their credit card tips in the restaurant's Toast point-of-sale system after each customer is closed out.

78.     At the end of each shift, the Tipped Employees put their cash tips into a locked box and then the general manager records the cash tip totals into another program, the Teamwork App.

79.     The Teamwork App shows a breakdown of cash tips and credit card tips, but the printed cash out slip at the end of each shift does not.

80.     Defendants' tip pool allocates a set amount of points for each category of employees in the tip pool that is multiplied by their eligible work hours to determine each worker's share of the tip pool on a given day.

81.     Servers get 5 points, lead servers get 5.5 points, hosts get 1 point, back waiters get 2.5 points, lead back waiters get 3 points, and bartenders get 5 points.

82.     Until February 2024, shift managers got 4 points under the point system.

83.     In addition, Defendants have paid a portion of the tip pool to non-tipped kitchen employees. The kitchen staff receive a total of 1.5% of food sales each night. Defendants use the tip pool to cover that 1.5%. The remainder is then split pursuant to the point system.

84.     The hours attributable to the tip pool were those worked from 3:30 pm to the end of the night.

85.     Thus, Defendants require the Tipped Employees to contribute a portion of their

tips to the non-Tipped Employees for the benefit of Defendants.

86.     In addition to the managers and kitchen staff who are included in the tip pool, the fact that Tipped Employees receive a share of the tip pool based on hours they worked in a non-tipped capacity—when they are functionally working as a janitor or laborer—also violates the rules for a valid tip pool.

87.     Defendants' tip pool, allocating shares to managers and non-tipped kitchen employees, benefits Defendants directly because it allows them to pay a lower wage to these employees, and allows them to supplement that wage with Tipped Employees' tips.

88.     Defendants' kitchen staff are not customarily or regularly engaged in customer service, and therefore are not permitted to share in the tip pool.

89.     Defendants are not permitted to require the Tipped Employees to pay for costs associated with a percentage of sales incentive that the Defendants set for the kitchen staff.

90.     Defendants' shift managers are not allowed to share in employee tips because they are managers.

91.     Defendants' shift managers are not customarily or regularly engaged in customer service.

92.     Defendants distribute the Tipped Employees' tips to the non-tipped employees, and/or employees not permitted to participate in a tip pool.

93.     Defendants failed to meet the requirements for claiming a tip credit because they required Tipped Employees to participate in an illegal tip pool.

94.     Defendants also failed to meet the requirements for claiming a tip credit because they required Tipped Employees to complete non-tipped hourly work while being paid a tipped wage rate for a substantial portion of their work hours.

95.     Tipped Employees were entitled to receive full minimum wage during the hours they worked in a non-tipped capacity. Because the Tipped Employees did not receive full minimum wage for these hours, their wages for the week fell short of minimum wage.

96.     Tipped Employees regularly started work at 3 or 3:30 pm.

97.     Al Posto does not open to the public until 5 pm.

98.     From 3:30 to 4pm, Tipped Employees were completing various side work tasks. Specifically, Tipped Employees primary job duties include stocking servers station, cleaning servers station, folding linens, checking and refilling sanitizer spray bottles and dishwasher chemicals, filling ice buckets, running the dishwasher, vacuuming under tables and on top of chairs, polishing glasses and silverware, filling salt & pepper shakers, stocking and cleaning restrooms, emptying trash, mopping the dining room, and dusting.

99.     From 4 to 4:45pm, Tipped Employees are required to attend a pre-shift meeting.

100.    On weeknights, the restaurant closes at 9 pm.

101.    On weekends, the restaurant closes at 10 pm.

102.    Tipped Employees are regularly required to work for 1 to 2 hours after their shift is over to help complete the various tasks, including those listed above, required to close the restaurant down for the night.

103.     As a result, Tipped Employees spend a substantial portion of their workshift—from 3:30 pm to 5 pm, and from 9 or 10 pm to 11 or 12:30 pm—completing non-tipped job duties while being paid a tipped hourly wage rate.

104.     As a result, Defendants have failed to meet the requirements for claiming a tip credit.

### Plaintiff's Individual Factual Allegations

105.     Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

106.     Plaintiff worked as a back waiter for Defendants from the end of September 2023 through early November 2023.

107.     Plaintiff was paid $10 per hour as a back waiter.

108.     As a back waiter, Plaintiff's primary job duties included bringing food from the kitchen, bringing drinks from the bar, refilling waters, bussing and pre-bussing, resetting tables, restocking servers station, cleaning servers station, folding linens, checking and refilling sanitizer spray bottles and dishwasher chemicals, filling ice buckets, running the dishwasher, vacuuming under tables and on top of chairs, polishing glasses and silverware, filling salt & pepper shakers, stocking and cleaning restrooms, emptying trash, mopping the dining room, and dusting.

109.     As a back waiter, Plaintiff received a share of a tip pool that also included servers, bartenders, kitchen staff, and a shift manager.

110.     Because individuals who were not eligible to participate in the tip pool received shares in the tip pool, Plaintiff's share of the tip pool while working as a back waiter was diminished.

111.    Plaintiff worked as a server for Defendants from early November 2023 until March 14, 2024.

112.    Plaintiff was paid $5.50 per hour for the hours he worked as a server.

113.    Plaintiff worked four to five shifts per week.

114.    As a server, Plaintiff participated in the restaurant's tip pool that also includes the kitchen staff and, until recently, included a shift manager.

115.    Because individuals who were not eligible to participate in the tip pool received shares in the tip pool, Plaintiff's share of the tip pool while working as a server was diminished.

116.    Because Plaintiff was required to share his tips with non-tipped employees, Defendants were not permitted to claim a tip credit from his wages.

117.    On a typical night as a server, Plaintiff worked from 3:30 to whenever the restaurant closed and side work was finished, which was typically between 11 pm and 12:30 am.

118.    As a server, Plaintiff's primary job duties included waiting on customers, taking orders, putting customer orders in the Toast system, bringing food from the kitchen, bringing drinks from the bar, refilling waters, bussing and pre-bussing, resetting tables, restocking servers station, cleaning servers station, folding linens, checking and refilling sanitizer spray bottles and dishwasher chemicals, filling ice buckets, running the dishwasher, vacuuming under tables and on top of chairs, polishing glasses and silverware, filling salt & pepper shakers, stocking and cleaning restrooms, emptying trash, mopping the dining room, and dusting.

119.    From 3:30 to 4pm during a typical shift, Plaintiff completed pre-shift side work, including prepping the server station, cleaning, folding linens, filling ice buckets, filling salt and pepper shakers, etc.

13

120. From 4 to 4:45 pm during a typical shift, Plaintiff was required to attend a pre-shift meeting where he and his co-workers receive instructions about how to carry out their job duties for the day.

121. From 5pm until sometime between 9pm and 11pm during a typical shift, Plaintiff served customers. During this time, Plaintiff regularly received tips.

122. For approximately an hour to an hour and a half at the end of his shift, Plaintiff was required to complete non-tipped side work, for example, taking out trash, cleaning, running the dishwasher, vacuuming, mopping, dusting, cleaning the server station, etc.

123. Despite completing substantial non-tipped work as a server, Plaintiff was paid a tipped wage rate of $5.50 per hour for the hours he worked.

124. Plaintiff regularly spent more than 20% of his shift completing non-tipped job duties while being paid a tipped wage rate.

125. On information and belief, on March 14, 2024, Defendants' General Manager Whitney Holtgrefe discovered that Plaintiff intended to file a lawsuit related to the claims alleged herein.

126. On March 14, 2024, during Plaintiff's shift, while dropping off his tip share in the office, Plaintiff was asked to sit down by Defendants' General Manager and Sous Chef Jacob (last name unknown).

127. During the meeting, Defendants' General Manager questioned Plaintiff about whether he was pursuing or contemplating a lawsuit against the company.

128. Defendants' General Manager fired Plaintiff at the meeting because he intended to file a lawsuit related to the wage and hour claims asserted herein.

129.    In other words, Plaintiff was terminated in gross retaliation for pursuing his right to tips that had been misappropriated from him and his co-workers. In fact, that was the express reason for his termination.

## Collective Action Allegations

130.    Plaintiff brings this action on behalf of himself and all similarly situated current and former Tipped Employees employed at Al Posto within the three years prior to the filing of the original Complaint in this action (the "FLSA Collective").

131.    At all relevant times, Plaintiff and all members the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully retaining the tips earned by Plaintiff and the FLSA Collective. Plaintiff' claims are essentially the same as those of the FLSA Collective.

132.    Additionally, Plaintiff and members of the FLSA Collective who received a tipped wage rate have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to meet the requirements for a tip credit as required by the FLSA and making impermissible deductions from their wages. Plaintiff' claims are essentially the same as those of the FLSA Collective.

133.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

134.    Defendants are aware or should have been aware that the conduct described herein is prohibited by federal law.

135.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

136.   The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

137.   The FLSA Collective members are readily identifiable and ascertainable.

138.   For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

139.   In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

140.   Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former Tipped Employees employed at Al Posto between 3 years before the date of filing this complaint and the date of final judgment in this matter ("Rule 23 Wage Subclass").

141.   Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former Tipped Employees employed at Al Posto between 6 years before the date of filing this complaint and the date of final judgment in this matter ("Rule 23 Unjust Enrichment Subclass").

142.   Together, the Rule 23 Wage Subclass, and the Rule 23 Unjust Enrichment Subclass constitute the "Rule 23 Class."

143.   Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class

16

period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

144.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

145.    The Rule 23 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

146.    There are more than 40 Rule 23 Class members.

147.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

148.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of requiring Plaintiff and the Rule 23 class to participate in an invalid tip pool, failing to properly take a tip credit from their wages, and failing to pay minimum wage.

149.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, O.R.C. § 4113.15, and the doctrine of unjust enrichment.

150.    Plaintiff and the Rule 23 Class members have all been injured in that they have been subjected to Defendants' common policies, practices, and patterns of conduct. Defendants' policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

151.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

152.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

153.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

154.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

155.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the

individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

156.    Upon information and belief, Defendants and other employers throughout the state violate Section 34a, and O.R.C. § 4113.15. Employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

157.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

158.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Defendants require Plaintiff and the Rule 23 Class members to participate in a tip pool with the non-tipped employees;

b. Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Rule 23 Class;

c. Whether Defendants require Plaintiff and the Rule 23 Class to complete non-tipped side work while being paid a tipped wage rate, and to what extent;

d. Whether Defendants failed to pay Plaintiff and the Rule 23 Class the wages due to them in a timely manner as described by O.R.C. § 4113.15;

e. Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class is in dispute;

f. Whether Defendants have benefited from appropriating the tips of Plaintiff and the Rule 23 Class for their own benefit to supplement the wages of other workers;

g. The nature and extent of class-wide injury and the measure of damages for those injuries; and

h. Whether Defendants are unjustly enriched at Plaintiff and the Rule 23 Class's expense.

## CAUSES OF ACTION

### Count 1
### Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

159. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

160. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

161. Plaintiff and the FLSA Collective are denied proper minimum wage because they are required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants' kitchen staff and shift managers.

162. Plaintiff and the servers in the FLSA Collective are denied proper minimum wage because they have to complete non-tipped side work for a significant portion of their shift while being paid a tipped wage rate.

163. As a result of Defendants' policies and practices, they are not permitted to take a tip credit from the wages of Plaintiff and members of the FLSA Collective.

164. Defendants misappropriated the tips of Plaintiff and the FLSA Collective.

165. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

166. Plaintiff and members of the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

167. Plaintiff and members of the FLSA Collective have been damaged by Defendants' retention of their tips in violation of the law.

168. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, withheld tips, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Wage Subclass)**

169. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

170.  Plaintiff and the Rule 23 Wage Subclass are non-exempt employees.

171.  During the relevant time period, Defendants failed to pay Plaintiff and the Rule 23 Wage Subclass the required minimum wages because they improperly required Plaintiff and the Rule 23 Wage Subclass to share tips with non-tipped workers.

172.  Defendants paid Plaintiff and the Rule 23 Subclass a tipped wage rate for non-tipped work.

173.  By retaining the tips received by Plaintiff and the Rule Wage 23 Class for their own purposes and requiring them to complete non-tipped job duties while being paid a tipped wage rate, Defendants have violated the Ohio Constitution, Article II, § 34a.

174.  As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, misappropriated tips, an additional two times unpaid wages/tips in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Wage Subclass)**

175.  Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

176.  During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Wage Subclass were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

177.  O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Wage Subclass all wages on or before the first day of each month, for wages earned during the first half

of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

178.   Plaintiff and the Rule 23 Subclass's unpaid wages and tips have remained unpaid for more than thirty days beyond their regularly scheduled payday.

179.   In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

180.   As a result of Defendants' willful violation, Plaintiff and the Rule 23 Wage Subclass are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

## Count 4
## O.R.C. § 2307.60
## (On Behalf of Plaintiff and the Rule 23 Wage Subclass)

181.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

182.   The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

183.   By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Wage Subclass have been injured as a result.

184.   O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

185.   As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Wage Subclass are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

## Count 5
## Unjust Enrichment
## (On Behalf of Plaintiff and the Rule 23 Unjust Enrichment Subclass)

186.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

187.    Defendants misappropriated Plaintiff's and the Rule 23 Unjust Enrichment Subclass's tips.

188.    Defendants supplemented the wages of its kitchen staff and managers, enabling them to attract better employees for these positions.

189.    Defendants knew that Plaintiff and the Rule 23 Unjust Enrichment Subclass conferred that benefit on Defendants.

190.    Defendants received benefits as a result of requiring Plaintiff and the Rule 23 Unjust Enrichment Subclass to pay the non-tipped employees a percentage of their tips each night.

191.    Defendants did not compensate Plaintiff and the Rule 23 Unjust Enrichment Subclass for these benefits.

192.    Accordingly, Defendants' retention of these benefits under these circumstances would be unjust.

193.    As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Unjust Enrichment Subclass are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Unjust Enrichment Subclass conferred on Defendants.

**Count 6**
**Retaliation - Fair Labor Standards Act**
**(On behalf of Plaintiff)**

194.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

195.     Plaintiff was terminated by Defendants because they learned that he was filing or contemplating filing the present lawsuit seeking misappropriated tips, for the express reason that he was "going after the company."

196.     As a result of Defendants' actions, Defendants have discharged or discriminated against Plaintiff in violation of 29 U.S.C. 215(a)(3).

197.     Plaintiff is entitled to any legal or equitable relief appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3), including, without limitation, compensatory damages, employment, reinstatement, payment of wages lost and an additional equal amount as liquidated damages, punitive damages, costs, and attorneys' fees.

**Count 7**
**Retaliation - Ohio Constitution, Article II, § 34a**
**(On behalf of Plaintiff)**

198.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

199.     Plaintiff was terminated by Defendants because they learned that he was filing or contemplating filing the present lawsuit seeking misappropriated tips, for the express reason that he was "going after the company."

200.     As a result of the foregoing, Defendants have discharged or discriminated against Plaintiff in violation of Section 34a.

201.     Plaintiff is entitled to legal or equitable relief appropriate to effectuate the purposes of Section 34a, including, without limitation, damages, employment, promotion, damages in an amount set by the Court sufficient to compensate the employee and deter future violations (but not less than one hundred fifty dollars for each day that the violation continued),

25

costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Terts Verhaak prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, misappropriated tips, and an equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA.

D.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

F.    A declaratory judgment that the practices complained of herein are unlawful under Section 34a.

G.    An award of unpaid minimum wages and tips due under Section 34a.

H.    An award of damages under Section 34a, based on Defendants' failure to pay minimum wages and tips pursuant to Section 34a, calculated as an additional two times of back wages and tips.

I.    A declaratory judgment that the practices complained of herein are unlawful under O.R.C. § 4113.15.

J.      Liquidated damages under O.R.C. § 4113.15.

K.      A declaratory judgment that the practices complained of herein are unlawful under O.R.C. § 2307.60.

L.      Compensatory and punitive damages under O.R.C. § 2307.60.

M.      An award of the value of the benefits for which Defendants were unjustly enriched.

N.      An award of compensatory and punitive damages to Plaintiff, pursuant to the FLSA, for retaliation.

O.      An award of damages to Plaintiff of at least $150 per day the violation continues, pursuant to the Ohio Constitution, Article II, Section 34a, for retaliation.

P.      An award of prejudgment and post-judgment interest.

Q.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

R.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Bar No. 0081452)
Andrew P. Kimble (Bar No. 0093172)
Biller & Kimble, LLC
8044 Montgomery Road
Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

**Jury Demand**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.


/s/ *Andrew Kimble*
Andrew Kimble